**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RASHAD MOORE,

   Petitioner,

                             Civil Action 4:12-CV-10133

v.                           HONORABLE GERSHWIN A. DRAIN
                            UNITED STATES DISTRICT COURT

STEVEN RIVARD,

     Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

### I. INTRODUCTION

      Rashad Moore, ("Petitioner"), confined at the Thumb Correctional Facility in Lapeer, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, Mr. Moore challenges his conviction for first-degree felony murder, M.C.L.A. 750.316(1)(b); two counts of armed robbery, M.C.L.A. 750.529; carrying a concealed weapon, M.C.L.A. 750.227; felon in possession of a firearm, M.C.L.A. 750.224f, and possession of a firearm in the commission of a felony, second offense, M.C.L.A. 750.227b.  For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

### II. BACKGROUND

      Mr. Moore was convicted of the above charges following a jury trial in the

1

Wayne County Circuit Court, in which he was tried jointly, but with separate juries, with his co-defendants Cory Lee Donald and Dewayne Saine.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> In this case, there was evidence that defendant Donald and codefendant Moore, each armed with a gun, intended to rob Mohamed Mackie. [Siante] Liggins testified that he saw both defendants enter the house.  Michael McGinnis, who was one of the robbery victims, testified that at least two people came inside the house and took money from his pocket while holding a gun to his head.  McGinnis heard two gunshots during the offense and later heard one of the intruders whisper that he had been shot.  When the intruders left, McGinnis discovered that Mackie had also been shot.  Liggins testified that both defendant Donald and codefendant Moore had guns when they returned to his car.  Defendant Donald was treated at a hospital for a gunshot wound later that night, and defendant Donald's blood was later discovered on the barrel of the weapon that was linked to the offense.

*People v. Moore,* No. 275691, 2008 WL 1061551, * 3 (Mich.Ct. App. April 10, 2008).

Additional facts regarding Mr. Moore's case are also taken from the Michigan Court of Appeals' decision affirming co-defendant Dewayne Saine's conviction:

> Defendant's [Saine's] convictions arise from the shooting death of Mohamed Makki (the victim), an alleged drug dealer, during a robbery at the victim's Dearborn home in November 2005.  Michael McGinnis, who was present in the home during the robbery, testified that two men entered the house.  While McGinnis was lying on the floor, he heard at least one man go to the basement.  McGinnis heard two gunshots and heard one of the men state that he had been shot.  Money and a cell phone were taken from McGinnis.  After the men left the house, McGinnis discovered that the victim had been shot in the back.
>
> Shortly after the offense, a police vehicle pulled alongside a white Ford

Taurus, which then sped away.  The police pursued the Taurus until it stopped at a dead-end street.  Rashad Moore, a passenger in the vehicle, and Siante Liggins, the driver of the vehicle, were eventually arrested. McGinnis's cellular phone and a black mask were found inside the Taurus, and keys to the victim's house were found in Moore's possession.

The prosecution's theory at trial was that Corey Donald and Rashad Moore had actually committed the robbery and shot the victim, that Donald was accidently shot during the offense, and that defendant [Saine] drove Donald to a hospital after the offense for treatment of his gunshot wound.  The prosecution also theorized that Donald and Moore were assisted by Liggins, who had been driving the Taurus.  The prosecution contended (1) that defendant [Saine] had assisted in planning the robbery with Donald, Moore, and others, (2) that defendant [Saine] had provided the gun that Donald used to commit the murder, (3) that defendant [Saine] took an active role in overseeing the robbery from outside the victim's house, and (4) that defendant [Saine] had assisted after the fact by driving Donald to an area hospital.  The prosecution supported its theory with the testimony of Liggins, who pleaded guilty to second-degree murder and agreed to testify against the other individuals who were allegedly involved in the offense.  The prosecution also presented telephone records that showed a series of calls on the day and evening of the offense, both between defendant [Saine] and Moore and between defendant [Saine] and Fawzi Zaya, the individual who allegedly formulated the robbery plan.

*People v. Saine,* Nos. 290836, 300685, 2012 WL 468255, * 1 (Mich.Ct. App. February 14, 2012)(internal footnotes omitted).

Mr. Moore's conviction was affirmed on appeal. *People v. Moore,* No. 275691, 2008 WL 1061551 (Mich.Ct. App. April 10, 2008); *lv. den.* 482 Mich. 976, 754 N.W.2d 882 (2008).

Mr. Moore filed a post-conviction motion for relief from judgment, which was denied. *People v. Moore,* No. 05-012835-01 (Third Circuit Court for the County of Wayne, June 30, 2010).  The Michigan appellate courts denied Mr. Moore leave to

3

appeal. *People v. Moore*, No. 299207 (Mich.Ct.App. May 12, 2011); *lv. den.* 490 Mich. 968, 806 N.W.2d 315 (2011).

Mr. Moore seeks a writ of habeas corpus on the following grounds:

I. MR. MOORE WAS DENIED HIS STATE CONSTITUTIONAL RIGHTS TO A FAIR TRIAL, 6TH AMENDMENT RIGHT TO A FAIR TRIAL, PROPERLY INSTRUCTED JURY, AND FULL RIGHT OF CONFRONTATION, AND HIS 14TH AMENDMENT RIGHTS OF DUE PROCESS AND TO PRESENT A DEFENSE.

II. CONSTITUTIONAL ERROR OCCURRED AGAINST THE 14TH AMENDMENT THAT DENIED DEFENDANT A FAIR TRIAL, WHEN THE CRIMINAL CODE, MCL § 750.422, FOR PERJURED TESTIMONY WILLFULLY BEING USED TO SWAY THE JURY FOR A GUILTY FINDING AGAINST THE DEFENDANT.

III. CONSTITUTIONAL ERROR OCCURRED AGAINST THE 14TH AMENDMENT WHEN THE PROSECUTOR FAILED TO SHOW AND PRODUCE THE TEST RESULTS OF DEFENDANT FIRING A GUN, AND GUN RESIDUE BEING DISCOVERED ON DEFENDANT'S HANDS, CLOTHES AND FACE.

IV. CONSTITUTIONAL ERROR OCCURRED AGAINST THE 14TH AMENDMENT WHEN THE PROSECUTOR ACTIONS TO GAIN A CONVICTION CONFLICT WITH THE STATUTE, FOR THE CLAIM LISTED BELOW.

V. CONSTITUTIONAL ERROR OCCURRED AGAINST THE 6TH AMENDMENT WHEN THE DEFENSE ATTORNEY FAILED TO HAVE MADE AVAILABLE THE LESSER COGNATE OFFENSES UNDER THE HOMICIDE STATUTE.

### III.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and

5

'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas

corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

## IV. <u>ANALYSIS</u>

### A. Claim # 1a and 1c. The Polygraph Examination Claims.

In subsections (a) and (c) of his first claim, Mr. Moore contends that the trial judge erred in denying his motion for a mistrial after complaining witness Michael McGinnis mentioned that he had taken a polygraph examination and that the judge gave an inadequate cautionary instruction to the jurors with respect to this testimony.

The facts underlying Mr. Moore's claim were discussed by the Michigan Court of Appeals in its opinion:

> On direct examination, the prosecutor asked McGinnis whether he ever saw his Razr cell phone after it had been stolen from him during the robbery. McGinnis responded: "Yes. The police showed me after

7

we went down to the police station they had me take a polygraph to make sure my story was correct because I did lie to them the first time." Following a defense objection, the trial court instructed the jury:

> Members of the jury, you know, that comment about the polygraph was not responsive to the prosecution. He mentioned it. Forget about that, and polygraph evidence usually as a rule is not allowed before the jury, so just forget about that comment, that testimony.

> Later, McGinnis was asked on cross-examination whether he told something to Sergeant Meiers. He replied, "If Sergeant Meiers is the one who gave me the polygraph." Defense counsel immediately interrupted and redirected the question. There was no objection or request for a curative instruction to this later response. Defendant Moore later moved for a mistrial based on McGinnis's references to a polygraph, which the trial court denied.

*Moore,* 2008 WL 1061551, at * 4.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Mr. Moore is not entitled to habeas relief on his claim involving the admission of evidence that Mr. McGinnis had taken a polygraph examination. The Supreme Court has never held that testimony or evidence which implies the results of a polygraph or similar test renders a criminal defendant's trial fundamentally unfair,

8

in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments.
*See Maldonado v. Wilson,* 416 F.3d 470, 477 (6th Cir. 2005). To grant habeas
relief to Mr. Moore "would necessarily imply that the Constitution requires all states
to have rules of evidence precluding some testimony about truth tests." *Id.,* at 478.
Because no Supreme Court precedent demands this result, the Michigan Court of
Appeals' rejection of petitioner's claim was not unreasonable under 28 U.S.C. §
2254(d). *Id.*

Moreover, the Sixth Circuit on direct review of federal criminal convictions has
"refused to impose a *per se* prohibition against polygraph evidence, and the mere
mention of the words 'polygraph examination' does not entitle a defendant to a new
trial." *United States v. Odom*, 13 F. 3d 949, 957 (6th Cir. 1994). In rejecting Mr.
Moore's claim, the Michigan Court of Appeals noted:

> Only McGinnis's first reference to a polygraph was met with an
> immediate objection and the trial court immediately gave a curative
> instruction. It is apparent, however, that both references were
> volunteered, and neither was injected in the context of attempting to
> bolster McGinnis's credibility. The first reference was offered as a
> frame of reference-to refer to the occasion when the police showed
> McGinnis his Razr phone, and the second reference occurred in the
> context of attempting to clarify the identity of a particular police officer.
> In neither instance were the results of any test revealed. Furthermore,
> McGinnis's credibility was not particularly crucial to a determination of
> defendant Moore's guilt or innocence. Although McGinnis was a
> robbery victim, he was not an eyewitness to the shooting of Mackie
> and he was not able to identify the perpetrators. Defendant Moore's
> identity as a perpetrator in the offense was instead established by
> independent evidence. Under the circumstances, the trial court did not
> abuse its discretion in denying defendant Moore's motion for a mistrial.

*Moore,* 2008 WL 1061551, at * 4.

A trial court has the discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity. *Walls v. Konteh,* 490 F. 3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F 3d 352, 354-55 (6th Cir. 1994).

In light of the fact that McGinnis's statements about taking a polygraph were unsolicited, that the results of the polygraph were not admitted into evidence, and that the judge instructed the jurors to disregard any evidence regarding the polygraph, the trial judge did not clearly err in denying Mr. Moore's motion for a mistrial. *See U.S. v. Walton,* 908 F. 2d 1289, 1292-94 (6th Cir. 1990).

Mr. Moore further claims that the trial judge's instruction to the jury concerning polygraph examinations was inadequate because the judge failed to instruct the jurors that polygraph tests are unreliable.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977).  The challenged instruction must not judged in isolation but must be considered in the

10

context of the entire jury charge. *Jones v. United* States, 527 U.S. 373, 391 (1999). Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009).  It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.  Moreover, in determining whether to grant habeas relief to a habeas petitioner based upon an erroneous jury instruction, the reviewing court must determine whether that instruction had a substantial and injurious effect or influence on the jury's verdict. *See Hedgpeth v. Pulido,* 555 U.S. 57, 61-62 (2008); *California v. Ray,* 519 U.S. 2, 5 (1996).

In the present case, although the judge did not inform the jurors that polygraph tests are unreliable, he did instruct them that McGinnis' comments about the polygraph were non-responsive to the prosecutor's question, that polygraph evidence is normally not admissible, and that they should disregard the evidence. Under the circumstances, the judge's instruction adequately advised the jurors to ignore the polygraph evidence.  Mr. Moore is not entitled to habeas relief on these claims.

### B.  Claim # 1b.  The Right to Present a Defense Claim.

In subclaim 1(b), Mr. Moore claims that he was denied his right to present a defense when the trial judge refused to allow petitioner's counsel to impeach Mr. McGinnis with a prior 2003 conviction for breaking and entering and his denial at the preliminary examination that he had a prior criminal record.

11

Pursuant to M.R.E. 609, evidence that a witness has been convicted of a crime may not be admitted unless the crime: (1) contained an element of dishonesty or false statement, or (2) contained an element of theft, was punishable by more than one year in prison, and has significant probative value on the issue of credibility.

Mr. Moore's claim that the trial court erred in excluding Mr. McGinnis's prior conviction for impeachment purposes pursuant to M.R.E. 609 does not present a constitutional challenge that is cognizable in a federal habeas proceeding. *See Burks v. Egeler,* 512 F.2d 221, 223 (6th Cir. 1975); *Newsome v. Compton,* 712 F. Supp. 654, 655, n. 2 (M.D. Tenn. 1988). Moreover, as the Michigan Court of Appeals noted in rejecting Mr. Moore's claim, *Moore,* Slip. Op. at * 6, the trial judge did not abuse his discretion in concluding that the breaking and entering conviction did not have significant probative value as to the issue of McGinnis' credibility, in light of the fact that McGinnis admitted to previously lying to the police, and that the jury was aware that McGinnis had a prior criminal record and history of involvement with drugs. In light of the fact that Mr. McGinnis's prior breaking and entering conviction would have been cumulative to other impeachment evidence, its exclusion from evidence did not violate Mr. Moore's right to present a defense or to a fair trial. *See Washington v. Renico*, 455 F.3d 722, 728-29 (6th Cir. 2006).

**C.  Claim # 1d.  The Judicial Bias Claim.**

Mr. Moore next claims that the judge pierced the veil of judicial impartiality

12

when he berated defense counsel in front of the jury.  Mr. Moore points to the

following exchange that took place during cross-examination when a witness told

defense counsel that he did not understand the question being asked him:

> Q: [defense counsel]: I'm asking you, are you testifying to what you actually remember, or other information that other people gave to you?
>
> THE COURT: Hold on a minute. I think it's a good response.  Can you explain and clarify that question, please.  I don't understand it myself.
>
> MR. CRIPPS [defense counsel]: Whether he has personal knowledge or whether he's testifying about information that --
>
> THE COURT: Why don't you just ask him questions, Mr. Cripps, and see?  Unless you got something specific that you want to impeach him on let's not dilly-dally around with some crazy question like that.  I don't mean crazy, but some question that's not aimed at anything in particular.  If you want to impeach him on something could you be specific about that?
>
> MR. CRIPPS: Yes, I can, Judge.
>
> THE COURT: Please.
>
> MR. CRIPPS: If the Court will allow me to.
>
> THE COURT: All right.
>
> MR. CRIPPS: Thank you.

(Tr. 9-20-06, pp 29-30).

The Michigan Court of Appeals rejected Mr. Moore's claim:

> Defendant Moore complains about a single instance in which a witness expressed confusion by one of defense counsel's questions and the trial court directed counsel to make his questions more specific. Although the trial court's comments may reflect some impatience with defense counsel, they did not pierce the veil of judicial impartiality.

13

> Further, considering the limited and isolated nature of the court's remarks, any perceived prejudice was alleviated by the trial court's later instructions to the jury that its comments, rulings, questions, and instructions were not evidence, and were not intended to influence the jury or express the judge's personal opinion.

*Moore,* 2008 WL 1061551, at * 7.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). The right to an impartial judge is a right whose deprivation a state prisoner may complain of in a federal habeas corpus proceeding. *Tyson v. Trigg*, 50 F.3d 436, 438 (7th Cir. 1995) (citing to *Turner v. Ohio*, 273 U.S. 510, 523 (1927); *In Re Murchison*, 349 U.S. 133 (1955)). Trial judges have a wide latitude in conducting trials, but they must preserve an attitude of impartiality and scrupulously avoid giving the jury the impression that the judge believes that the defendant is guilty. *Harrington v. State of Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997); *Brown v. Palmer,* 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).

However, in reviewing an allegation of judicial misconduct in a habeas corpus petition, a federal court must ask itself whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process. *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995); *Brown v. Palmer,* 358 F. Supp. 2d at 657. To sustain an allegation of bias by a state trial judge as a grounds for habeas relief, a habeas petitioner must factually demonstrate that during the trial the judge

14

assumed an attitude which went further than an expression of his or her personal opinion and impressed the jury as being more than an impartial observer. *Brinlee v. Crisp*, 608 F.2d 839, 852-53 (10th Cir. 1979); *Brown,* 358 F. Supp. 2d at 657.  A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a significant degree before habeas relief could be granted. *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985); *Brown,* 358 F. Supp. 2d at 657.  The Supreme Court has ruled that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias or misconduct. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).  "A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune." *Id.*

Mr. Moore has failed to show that the judge's isolated remark was inappropriate or prejudiced his right to a fair trial.  Although the trial judge expressed his impatience and frustration with defense counsel, his remarks were generally in response to defense counsel's line of questions, thus, the judge's conduct was not so prejudicial so as to deprive petitioner of a fair trial. *See e.g. Todd v. Stegal,* 40 F. App'x 25, 27 (6th Cir. 2002).  In this case, "The reprimands were not out of line, nor were they substantially adverse to [petitioner] himself.  There is no showing that the trial judge ever intimated his opinion on the merits of the case." *Id.* at 27.  Moreover, any prejudice was also cured by the fact that the judge instructed the jury

15

that his rulings were not evidence and further advised the jurors that if they believed that the judge had an opinion about how they should decide the case, that they should disregard that opinion and that they were the only judges of the facts. (Tr. 9/26/2006, p. 8). *Id.* at 28.  Mr. Moore is not entitled to habeas relief on his claim.

### D.  Claims # 2-5.  The Procedurally Defaulted Claims.

Respondent argues that Mr. Moore's remaining claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion, and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If the petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support

16

the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(i).

The Supreme Court noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Mr. Moore's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders,

17

however, did not refer to subsection (D)(3) nor did they mention Mr. Moore's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Mr. Moore's claims. *Id.*

In the present case, the Wayne County Circuit Court judge, in rejecting Mr. Moore's motion for relief from judgment, twice indicated that petitioner had failed to meet the "good cause" and "actual prejudice" requirements of M.C.R. 6.508(D). The trial judge also cited to the entire text of M.C.R. 6.508(D), including subsection (3). *People v. Moore,* No. 05-012835-01, * 1-2.

The trial judge clearly invoked M.C.R. 6.508(D)(3)(b) in denying Mr. Moore's post-conviction claims.  Because the trial court judge denied Mr. Moore post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's post-conviction claims are clearly procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F. 3d 284, 292-93 (6th  Cir. 2007); *see also Howard v. Bouchard,* 405 F. 3d 459, 477 (6th Cir. 2005).  The fact that the trial judge may have also discussed the merits of Mr. Moore's claims in addition to invoking the provisions of M.C.R. 6.508(D)(3) to reject petitioner's claims does not

18

alter this analysis. *See Alvarez v. Straub,* 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F. 2d 264, 267 (6th Cir. 1991). Mr. Moore's second through fifth claims are procedurally defaulted. [1]

Mr. Moore contends that his appellate counsel was ineffective for failing to raise his post-conviction claims on his appeal of right.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

*Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at

---

[1] Mr. Moore could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F. 3d at 291; *Hicks v. Straub*, 377 F. 3d 538, 558, n. 17 (6th Cir. 2004). However, for the reasons stated below, Mr. Moore is not entitled to habeas relief on any such claim.

463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

Notwithstanding *Barnes*, it is still possible to bring a *Strickland* [*v. Washington,* 466 U.S. 668 (1984)] claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th  Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Mr. Moore has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from

20

judgment.  Appellate counsel filed a thirty page appellate brief raising four claims that petitioner has raised as four separate subclaims in his first claim for relief.  Mr. Moore has not shown that appellate counsel's strategy in presenting these four claims and not raising other claims was deficient or unreasonable.  Moreover, for the reasons stated by the Wayne County Circuit Court in rejecting Mr. Moore's post-conviction claims and by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, none of the claims raised by Mr. Moore in his post-conviction motion were "dead bang winners."  Because the defaulted claims are not "dead bang winners," petitioner failed to establish cause for his procedural default of failing to raise these claims on direct review.  *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000).

Moreover, because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by Mr. Moore.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Mr. Moore has failed to show cause to excuse his default of the claims that he raised for the first time on state post-conviction review.  Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *See Smith v. Murray*, 477 U.S. at 533.

Additionally, Mr. Moore has not presented any new reliable evidence to

support any assertion of innocence which would allow this Court to consider the claims that he raised for the first time in his post-conviction motion for relief from judgment as a ground for a writ of habeas corpus in spite of the procedural default. Because Mr. Moore has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's procedurally defaulted claims on the merits. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002).

Finally, assuming that Mr. Moore had established cause for the default of his claims, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief.  The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007).  For the reasons stated by the Wayne County Circuit Court judge in rejecting Mr. Moore's second through fifth claims when he denied petitioner's post-conviction motion and by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, Mr. Moore has failed to show that his procedurally defaulted claims have any merit.  In particular, the reasons justifying the denial of Mr. Moore's procedurally defaulted claims were "ably articulated by the" Wayne County Circuit Court judge in rejecting petitioner's motion for relief from judgment, therefore, "the issuance of a full written opinion" by this Court regarding these claims "would be duplicative and serve no useful, jurisprudential purpose." *See e.g. Bason v. Yukins,*

22

328 Fed. App'x 323, 324 (6th Cir. 2009).  Mr. Moore is not entitled to habeas relief on his procedurally defaulted claims.

## V.  **CONCLUSION**

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Mr. Moore a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d at 885.  The Court will also deny Mr. Moore leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## VI. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED**.

/s/Gershwin A Drain
**HON. GERSHWIN A. DRAIN**
Dated: January 31, 2014        UNITED STATES DISTRICT JUDGE

24

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 31, 2014.

                                        s/Tanya R. Bankston
                                        TANYA R.BANKSTON
                                        Case Manager & Deputy Clerk